IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LAURA OWENS,                                3:14-cv-01299-BR

       Plaintiff,                         OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,

       Defendant.


GEORGE J. WALL
1336 E. Burnside, Suite 130
Portland, OR 97214
(503) 236-0068

       Attorney for Plaintiff

BILLY J. WILLIAMS
Acting United States Attorney
**RONALD K. SILVER**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204
(503) 727-1044

1 - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**ERIN F. HIGHLAND**
Special Assistant United States Attorneys
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2495

    Attorneys for Defendant

**BROWN, Judge.**

Plaintiff Laura Owens seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Act.

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a thorough review of the record, the Court **AFFIRMS** the final decision of the Commissioner.

## ADMINISTRATIVE HISTORY

Plaintiff filed her application for SSI on July 7, 2011. Tr. 17.[1] Her applications were denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on February 26, 2013. Tr. 39. At the hearing Plaintiff

---

[1] Citations to the official transcript of record filed by the Commissioner on December 16, 2014, are referred to as "Tr."

2 - OPINION AND ORDER

was represented by an attorney. Plaintiff and a vocational expert (VE) testified at the hearing. Tr. 39.

The ALJ issued a decision on March 14, 2013, in which he found Plaintiff is not entitled to benefits. Tr. 17-27. That decision became the final decision of the Commissioner on July 21, 2014, when the Appeals Council denied Plaintiff's request for review. Tr. 1-3. See Sims v. Apfel, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on December 29, 1976; was 36 years old on the date of the hearing; and has a high-school equivalency diploma. Tr. 45, 221, 227. Plaintiff has prior relevant work experience as a caregiver. Tr. 70.

Plaintiff alleges disability since June 15, 2007, due to depression, post-traumatic stress disorder, and anxiety. Tr. 195, 226, 254.

Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. See Tr. 20-25.

## STANDARDS

The initial burden of proof rests on the claimant to

establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is "more than a mere scintilla" of evidence but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir.

4 - OPINION AND ORDER

2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. *Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). *See also Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. § 416.920. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(I). *See also Keyser*, 648 F.3d at 724.

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe

5 - OPINION AND ORDER

impairment or combination of impairments. *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R. § 416.920(a)(4)(ii); *Keyser*, 648 F.3d at 724.

At Step Three the Commissioner must determine whether a claimant's impairments meet or equal one of the listed impairments and are so severe that they preclude substantial gainful activity. The claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*,

6 - OPINION AND ORDER

659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis when the ALJ is determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser,* 648 F.3d at 724-25. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

7 - OPINION AND ORDER

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not carry her burden to prove that she had not engaged in substantial gainful activity since July 7, 2011, the application date. Tr. 19. Nonetheless, the ALJ continued the sequential evaluation.

At Step Two the ALJ found Plaintiff has the severe impairments of major depressive disorder, bipolar disorder, post-traumatic stress disorder, obsessive compulsive disorder, "psychological problems affecting physical symptoms," and borderline personality disorder. Tr. 19-20.

At Step Three the ALJ found Plaintiff's impairments do not meet or equal the criteria for any impairment in the Listing of Impairments. Tr. 20-21. In his assessment of Plaintiff's RFC, the ALJ found Plaintiff has the functional capacity to perform a full range of work at all exertional levels. The ALJ, however, found Plaintiff can only have "incidental contact with the public and with coworkers," cannot work "in teams," and is limited to "simple, repetitive task work, not complex or detailed." Tr. 21-25.

At Step Four the ALJ found Plaintiff is able to perform her past relevant work as a caregiver as actually performed by Plaintiff. Tr. 26.

At Step Five the ALJ found Plaintiff is also capable of performing other work that exists in significant numbers in the

8 - OPINION AND ORDER

national economy, including work as a hand packager, laboratory helper, and "companion." Accordingly, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 35.

## DISCUSSION

Plaintiff contends the ALJ erred when he (1) found at Step One that Plaintiff had not carried her burden to demonstrate that she had not engaged in substantial gainful activity since the application date; (2) concluded at Step Four that Plaintiff could perform her past relevant work as a caregiver as actually performed by Plaintiff; and (3) concluded at Step Five that Plaintiff could perform other work available in significant numbers in the national economy.

### I.  Step One

As noted, at Step One the claimant bears the burden to demonstrate that she had not engaged in substantial gainful activity since the alleged onset date. 20 C.F.R. § 416.920(a)(4)(I).

Plaintiff's earnings report indicates she did not record any wages earned during the period relevant to the determination of her disability. Tr. 204-09. Plaintiff testified, however, since 2007 she "did illegal things for money," collected food stamps, received help from her family, and had been cleaning (and

continued to do so) an acupuncture clinic once per month for approximately $50 per cleaning. The ALJ concluded Plaintiff failed to carry her burden to prove that she had not engaged in substantial gainful activity since July 7, 2011, her application date.

The record, however, does not include any evidence that can be reasonably construed to suggest that Plaintiff has engaged in substantial gainful activity. To the contrary, Plaintiff's testimony only suggests she has worked informally and sporadically since 2007, and, therefore, the record does not contradict Plaintiff's testimony.

Accordingly, the Court concludes on this record the ALJ's determination that Plaintiff failed to carry her burden to prove that she had not engaged in substantial gainful activity since her application date is not supported by substantial evidence in the record. Nevertheless, the ALJ's error by itself was harmless because the ALJ continued with the sequential evaluation. See Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014)("An error is harmless if it is 'inconsequential to the ultimate nondisability determination,' or 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity.'")(quoting Alaska Dep't of Evntl. Conservation v. Envtl. Prot. Agency, 540 U.S. 461, 497

(2004), and *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

**II. Step Four**

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). Accordingly, the ALJ must make the requisite factual findings supported by substantial evidence in the record before concluding that the claimant is "able to perform: 1. The actual functional demands of the job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 845. "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.*

At the hearing Plaintiff testified she worked as a "home health aide." Tr. 66. Plaintiff stated she worked nights, that her client was "more of a quiet one," and that she would typically watch television with her client "for a few hours" before the client went to bed. Tr. 66. When her client went to bed, Plaintiff reported, she would sleep on a couch in the living room until the next shift took over at 8:00 a.m. Tr. 67.

11 - OPINION AND ORDER

When the ALJ asked the VE whether Plaintiff could perform her prior work as a "[c]aregiver" in light of the ALJ's assessment of Plaintiff's RFC, the VE answered: "In my opinion, yes." Tr. 71-72. The ALJ concluded:

> [The VE] testified that the claimant has past relevant work as a care giver (medium, semiskilled SVP 3). [The VE] further testified that an individual with the characteristics and impairments of the claimant, and with the residual functional capacity assessed, would be able to perform her past relevant work as a caregiver as it was performed by the claimant.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, and in light of [the VE's] testimony, I find that the claimant is able to perform her past relevant work as a caregiver as it was actually performed.

Tr. 26.

The ALJ, however, did not make any specific findings regarding the physical and mental demands of Plaintiff's past work as a caregiver as actually performed by Plaintiff. Thus, the ALJ's findings with respect to his determination that Plaintiff could perform her past work as a caregiver as actually performed by her are legally insufficient. *See Pinto*, 249 F.3d at 844.

Accordingly, on this record the Court concludes the ALJ erred when he concluded Plaintiff is not disabled at Step Four. Because the ALJ continued the analysis under Step Five, however, any error at Step Four is harmless by itself. *See Treichler*, 775 F.3d at 1099.

12 - OPINION AND ORDER

## III. Step Five

As noted, an ALJ may rely on VE testimony to carry the Commissioner's burden to prove that a significant number of jobs exist in the national economy that the claimant can perform. The Dictionary of Occupational Titles (DOT) is presumptively authoritative regarding job classifications, but the presumption is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Thus, before he may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (2007). In accordance with SSR 00-4p, the ALJ must ask the VE whether his testimony is consistent with the DOT. *Id.* at 1152-53. If "there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict." SSR 00-4p. *See also Massachi v. Astrue,* 486 F.3d 1149, 1153-54 (9th Cir. 2007).

As noted, based on the VE's testimony at Step Five the ALJ concluded Plaintiff had the ability to perform other work in the national economy, including work as a hand packager, laboratory helper, and "companion." Tr. 27. Plaintiff contends the ALJ improperly relied on the VE's testimony as to each of these occupations to carry the Commissioner's burden at Step Five

13 - OPINION AND ORDER

because the VE's testimony that Plaintiff could perform each job in light of the ALJ's assessment of Plaintiff's RFC deviated from the DOT. Plaintiff specifically contends the hand-packager occupation as described in the DOT is inconsistent with the ALJ's assessment that Plaintiff may only have "incidental" contact with co-workers and that the reasoning level assigned by the DOT to each of the three named jobs exceeds Plaintiff's capacity under the ALJ's assessment of Plaintiff's RFC.

### A. Limitation to "Incidental" Contact with Co-workers

As noted, Plaintiff contends the ALJ's reliance on the VE testimony that Plaintiff could work as a hand packager was improper because that occupation is inconsistent with the ALJ's assessment that Plaintiff is limited to "incidental" contact with co-workers.

In his assessment of Plaintiff's RFC the ALJ limited Plaintiff to "incidental contact with the public and with coworkers." At the hearing the ALJ defined "incidental" to the VE as "[b]asically working on your own. You're naturally going to come into contact with coworkers, but basically you're working on your own." Tr. 71. After being presented with this definition, the VE stated the "hand packer [occupation] would remain" available to Plaintiff under the ALJ's assessment of Plaintiff's RFC. Tr. 71-72. The VE explained: "A hand packager is usually in some type of industrial setting, and you're

14 - OPINION AND ORDER

basically - you're with other people, but they have no interaction when it comes to production." Tr. 72. Thus, the ALJ's assessed limitation of Plaintiff to "incidental" contact with co-workers is consistent with the occupation of hand packager.

## B. Reasoning Limitation

Plaintiff contends the ALJ erred at Step Five because the VE testimony as to the three occupations in the national economy that the Plaintiff purportedly can perform are unavailable to Plaintiff under the ALJ's assessment of Plaintiff's RFC as the reasoning requirements under the DOT for those occupations exceed Plaintiff's capabilities. The DOT separates reasoning levels into six categories, three of which are relevant here:

> Level One: Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> Level Two: Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> Level Three: Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations.

DOT, App. C, 1991 WL 688702. The DOT descriptions of the hand

15 - OPINION AND ORDER

packager and laboratory helper require Reasoning Level Two. See DOT § 381.687-022, 1991 WL 673259 (laboratory helper); DOT § 920.587-018, 1991 WL 687916 (hand packager). The DOT description of "companion," however, requires Reasoning Level Three. See DOT § 309.677-010, 1991 WL 672667.

In his assessment of Plaintiff's RFC the ALJ found Plaintiff could only perform "simple, repetitive task work, not complex or detailed." Tr. 22. Plaintiff contends this limitation is consistent only with Reasoning Level One and, therefore, is inconsistent with Reasoning Levels Two and Three.

The Ninth Circuit recently held a "claimant's limitation to 'simple and routine work tasks' is 'inconsistent with the demands of level-three reasoning' because the plaintiff's residual functional capacity was more consistent with Level 2 than Level 3 Reasoning." Zavalin v. Colvin, 778 F.3d 842, 846-47 (9th Cir. 2015)(quoting Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)). See also Gilbert v. Colvin, 6:14-cv-00394-AA, 2015 WL 1478441, at *6-*7 (D. Or. Mar. 31, 2015)(collecting cases and concluding an ALJ's erroneous finding that a treatment provider's "report 'does not support a finding that [plaintiff] cannot perform complex tasks'" was harmless because the ALJ relied on occupations that only required Reasoning Level Two).

Accordingly, this Court concludes the limitation to "simple, repetitive task work, not complex or detailed" in the ALJ's

16 - OPINION AND ORDER

assessment of Plaintiff's RFC is consistent with Reasoning Level Two, but is not consistent with Reasoning Level Three. Thus, the VE's testimony that Plaintiff is capable of performing work as a hand packager and a laboratory helper is consistent with the DOT, but the VE's testimony that Plaintiff is capable of performing work as a "companion" is not.

The ALJ can only rely on the VE's testimony to satisfy the Commissioner's burden to show that Plaintiff is capable of performing other work if the total number of jobs as a hand packager and laboratory helper are available in "significant numbers" in either the national or regional economy. *See Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). The Ninth Circuit has held as few as 25,000 jobs available in the national economy or 900 jobs available in the regional economy are sufficient to constitute jobs available in "significant numbers." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 529-30 (9th Cir. 2014). *See also Yelovich v. Colvin*, 532 F. App'x 700, 702 (9th Cir. 2013).

The hand-packager occupation represents 460 jobs in the regional economy and 42,000 jobs in the national economy. Tr. 71. The laboratory-helper occupation represents 650 jobs in the regional economy and 51,000 in the national economy. Because the total number of these jobs (93,000 in the national economy and 1,100 in the regional economy) satisfies the "significant

17 - OPINION AND ORDER

numbers" requirement, the Court concludes the ALJ did not err when he relied on the VE's testimony to carry the Commissioner's burden at Step Five.

In summary, the Court concludes on this record that the ALJ did not err at Step Five when he relied on the VE's testimony that a significant number of jobs exist in the national and regional economy that Plaintiff can perform. Because the ALJ's Step Five finding was an alternative to the ALJ's erroneous conclusions at Step One and Step Four, those errors by the ALJ were harmless.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the final decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 7th day of July, 2015.

_____
ANNA J. BROWN
United States District Judge